**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Texas Hill Country Landscaping Inc. d/b/a | **)** | **Case No. :** |
| Organic Quality Products, Easterling Wood | **)** | |
| Products Inc., Morning Star Farms, and | **)** | |
| Northwest Recycling, LLC, *on behalf of* | **)** | |
| *themselves and all others similarly situated,* | **)** | **JURY TRIAL DEMANDED** |
| | **)** | |
| Plaintiffs | **)** | |
| v. | **)** | |
| | **)** | |
| Caterpillar Inc. | **)** | |
| | **)** | |
| Defendant. | **)** | |

**CLASS ACTION COMPLAINT**

## TABLE OF CONTENTS

**Page**

I.     NATURE OF THE ACTION ............................................................................. 1

II.    PARTIES ......................................................................................................... 2

    A.     Plaintiffs ............................................................................................ 2

    B.     Defendant .......................................................................................... 8

III.   JURISDICTION AND VENUE ....................................................................... 9

IV.    CHOICE OF LAW .......................................................................................... 9

V.     FACTUAL ALLEGATIONS ......................................................................... 10

    A.     Use of Cylinder Liners .................................................................... 10

    B.     Nature of the Defect ........................................................................ 11

    C.     Impacted Caterpillar Engines ......................................................... 12

    D.     The Caterpillar Warranties ............................................................. 13

    E.     As a Result of the Defect, the Caterpillar Products Repeatedly Fail, Uniformly Injuring Proposed Class Members. .................................. 14

    F.     Caterpillar's Authorized Dealers .................................................... 15

    G.     Caterpillar Concealed the Defect ................................................... 16

    H.     Caterpillar's Representations Regarding Its Engines ...................... 17

    I.     The Defect Is Widespread and Harms the Class ............................. 18

VI.    TOLLING OF STATUTES OF LIMITATIONS ............................................ 18

VII.   CLASS ALLEGATIONS ............................................................................... 20

    A.     Class Definitions ............................................................................. 20

    B.     The Prerequisites of Rule 23(a) Are Satisfied. ............................... 21

    C.     The Prerequisites of Rule 23(b)(2) Are Satisfied. ........................... 24

    D.     The Prerequisites of Rule 23(b)(3) Are Satisfied. ........................... 24

    E.     The Prerequisites of Rule 23(c)(4) Are Satisfied. ........................... 25

VIII.  CAUSES OF ACTION ................................................................................... 25

    FIRST CAUSE OF ACTION CLAIM FOR DECLARATORY AND/OR INJUNCTIVE RELIEF ..................................................................... 25

    SECOND CAUSE OF ACTION BREACH OF EXPRESS WARRANTY ........ 26

    THIRD CAUSE OF ACTION BREACH OF IMPLIED WARRANTY ........... 28

1729489.5

FOURTH CAUSE OF ACTION NEGLIGENT MISREPRESENTATION....... 30

FIFTH CAUSE OF ACTION UNJUST ENRICHMENT ................................... 31

SIXTH CAUSE OF ACTION NEGLIGENCE .................................................. 32

PRAYER FOR RELIEF ........................................................................................... 33

1729489.5

Plaintiffs Texas Hill Country Landscaping, Inc. d/b/a Quality Organic Products of Selma, Morning Star Farms, and Northwest Recycling, LLC ("Plaintiffs"), on behalf of themselves and all other similarly-situated persons and entities, by and through their designated attorneys, bring this class action complaint against Caterpillar, Inc. ("Caterpillar") and allege as follows:

## I.     NATURE OF THE ACTION

1.      Plaintiffs bring this class action for declaratory judgment, injunctive relief, and money damages on behalf of themselves and all United States residents who purchased or leased a Caterpillar product containing the C-18 or C-32 engine with particular cylinder liners (the "Liners").  Plaintiffs paid hundreds of thousands of dollars for these products.

2.      The Liners have an inherent defect ("Defect") that leads to repeated failures.  In particular, as confirmed by metallurgical analysis, the Liners crack because of residual stress. This allows oil and coolant to mix, ultimately leading to engine failure.  That failure requires expensive, time-consuming repairs in existing engines and prevented Plaintiffs and other proposed class ("Class") members from using their products.  Properly designed and manufactured liners do not allow oil and coolant to mix, yet Caterpillar sold and leased two different commercial propulsion engines (the C-18 and C-32) with the Liners.

3.      Caterpillar was no less than negligent when it sold the Liners because a reasonably careful manufacturer would have uncovered the Defect.  Indeed, on information and belief, Caterpillar *did* know about the Defect, but simply chose to conceal it from its customers. And whether or not Caterpillar had actual knowledge of the Defect, it breached both its express and implied warranties because, among other things, C-18 and C-32 engines with the Liners are not as represented by Caterpillar at the point of sale, and Caterpillar failed to repair the Defect properly.

4.      Plaintiffs seek both equitable relief and compensatory damages on behalf of

1

themselves and the Class.  First, Plaintiffs ask the Court to order that Caterpillar must repair the defect under its warranties and to declare that any purported limitation of its warranty is invalid.  Second, Plaintiffs will ask a jury to award compensatory damages for the economic harm that Caterpillar caused when it sold the Liners.  They note that Caterpillar damaged Plaintiffs and the Class significantly: (A) an engine with the Defect has a lower market value than a non-defective engine; (B) the Defect is costly to repair; (C) the Defect caused Plaintiffs and the Class to lose profits; and (D) the Defect damages other equipment.

## II.      PARTIES

### A.      Plaintiffs

### i.    Quality Organic Products

5.      Plaintiff Texas Hill Country Landscaping, Inc. d/b/a Quality Organic Products of Selma is a corporation incorporated and headquartered in Texas.  Quality Organic Products provides agricultural services in Texas, including mulching, soil and compost, gravel and sand, fertilizer, trees, and palletized products.

6.      In December 2017, Quality Organic Products purchased a new RotoChopper B66 Horizontal Grinder for $647,961.  This product contained a Caterpillar C-18 engine.

7.      At all relevant times, the Rotochopper purchased by Quality Organic Products was covered by Caterpillar's warranty and Quality Organic Products complied with its obligations under the Caterpillar warranty.

8.      In March 2018, Quality Organic Products' Caterpillar C-18 engine began to overheat and oil was discovered in the engine's radiator.

9.      After a repair that lasted two-and-a-half weeks, the machine was purportedly fixed by an authorized Caterpillar dealer replacing the oil pumping and gutting out the radiator of the engine.

1729489.5

10.     As detailed below, Caterpillar's authorized dealers, called independent dealers, are the only means by which Caterpillar allows engine owners to obtain repairs under its warranties and the authorized dealers act as Caterpillar's agents.

11.     After the repair Quality Organic Products ran the machine for *just* four hours before the exact same problem occurred with the product's engine. That is because Caterpillar's repair—replacing one Liner with another—failed.

12.     Quality Organic Products was told by the local dealer that the cylinder liner had cracked and would need to be replaced.

13.     Within the express warranty period, Caterpillar failed to provide its authorized dealers with the necessary parts—a different engine liner—and information about the Defect to complete a proper repair of the engine when it was first presented for repair. Instead, Caterpillar replaced a defective part in Quality Organic Products' RotoChopper with the same defective part. Accordingly, Caterpillar failed to provide the promised warranty benefits despite Quality Organic Products' demand to do so and the earnest need for effective repairs, the same within the warranty's time eligibility.

14.     Caterpillar refused to perform, through its dealer, an adequate, suitable or capable repair causing Quality Organic Products to lose profits and suffer business reputational harm when it could not service its customers. Specifically, Quality Organic Products suffered hundreds of thousands, if not millions, of dollars of lost revenue while its engine, that it had bought less than a year earlier, was being repaired.

15.     Despite knowing that Quality Organic Products and the members of the Class bought engines with the Defect, Caterpillar responded, through its dealer, by failing to properly fix the Defect despite knowing that its attempted repair using the same Liner would not fix the

- 3 -

engine or its related components.

16.     Despite attempts at repair or replacement by the authorized Caterpillar dealer, Quality Organic Products' engine continued to fail due to the Defect.

17.     Neither Caterpillar, nor any of its dealers or representatives, informed Quality Organic Products that the Engine was defective, or of Caterpillar's misrepresentations and omissions associated with the Defect.

18.     Had Quality Organic Products been notified of the Defect, it would not have purchased the Rotochopper or it would have paid substantially less.

19.     Quality Organic Products has suffered ascertainable losses as a result of Caterpillar's misrepresentations and omissions associated with the Defect.  Quality Organic Products seeks recovery of all actual damages (including direct, incidental, and consequential damages).

20.     Quality Organic Product's experience mirrors that of thousands of other owners and lessees of products with the Defect.

**ii.     Morning Star Farms**

21.     Morning Star Farms is a general partnership located and headquartered in Greensburg, Kansas.  It operates a rotochopper as part of its farming.

22.     On January 8, 2018, Morning Star Farms leased a 2017 Rotochopper B66 Hay Grinder for a purchase price of $492,275.04 from Farm Credit Leasing.  This product contained a Caterpillar C-18 engine.

23.     Morning Star Farms' Rotochopper broke down shortly after it was purchased in early 2018.  Prior to breaking down, Morning Star Farms received a phone call from its authorized Caterpillar dealer inquiring whether the oil and water had mixed in the RotoChopper's engine.  At that point it had not, but roughly ten days later, the Rotochopper

broke down when water and oil mixed in the engine.

24.    Morning Star Farms' warranty covered the repair costs.  The warranty claim described complaint as "oil entering coolant system" and the cause as a "cracked cylinder liners."  It also noted that "preliminary tested [sic] pointed to an internal failure, found a service letter that included this engine serial number."  In order to properly repair the cylinder liners, the RotoChopper's engine had to be removed and disassembled.

25.    The "service letter" referenced in the warranty claim and the dealer's call to Morning Star Farms inquiring about water and oil mixing in the engine demonstrates that Caterpillar was aware of the Defect and had informed its authorized dealers of the Defect. However, at no point did Caterpillar inform Morning Star Farms, through calls, service letters, or otherwise, about the Defect.

26.    It took thirty to forty days to fully repair the RotoChopper by replacing the Liner with a new product.

27.    At all relevant times, Morning Star Farms' RotoChopper was covered by Caterpillar's warranty and Morning Star Farms complied with all of its obligations under the Caterpillar warranty.

28.    At all relevant times, Caterpillar failed to adequately repair the Defect because it did not notify Morning Star Farms of the Defect and remediate the problem.  It waited until Morning Star Farms' RotoChopper broke down before fixing the problem which caused Morning Star Farms to lose profits and suffer business reputational harm when it could not service its customers.  Specifically, Morning Star Farms suffered tens of thousands of dollars of lost revenue while its engine, that it had bought less than a year earlier, was being repaired.

29.    Despite knowing that Morning Star Farms and the members of the Class had

- 5 -

bought engines with the Defect that failed to perform wholly, or in substantial part, Caterpillar responded by failing to properly fix or recall Engines with the Defect.

30.     Neither Caterpillar, nor any of its dealers or representatives, informed Morning Star Farms that the Engine was defective, or of Caterpillar's misrepresentations and omissions associated with the Defect.

31.     Had Morning Star Farms been notified of the Defect, it would not have purchased the product or it would have paid substantially less.

32.     Morning Star Farms has suffered ascertainable losses as a result of Caterpillar's misrepresentations and omissions associated with the Defect.  Morning Star Farms seeks recovery of all actual damages (including direct, incidental, and consequential damages).

33.     Morning Star Farms' experience mirrors that of thousands of other owners and lessees of products with the Defects.

### iii.    Northwest Recycling

34.     Northwest Recycling LLC ("Northwest Recycling") is an LLC located and incorporated in the State of Maryland.

35.     On February 15, 2018, Northwest Recycling purchased a RotoChopper containing a C-18 engine from Alban Tractor company, an authorized Caterpillar dealer.

36.     Shortly after purchasing the C-18 engine, Northwest Recycling experienced oil in its coolant.  In repair papers drafted on June 10, 2018, by Alban Tractor Company, the "'cause of failure' is described as "cylinder liner #2 cracked, allowing oil and coolant to mix."  In the remedy section, the prescribed remedy is "perform Service Letter PS53727" and references an April 4, 2018 date for that service letter.  In that repair, Caterpillar replaced the cylinder liners under warranty.

37.     The April 4, 2018 service letter clearly described how to fix the engine liner and

- 6 -

demonstrates that Caterpillar was aware of the Defect and had informed its dealers of this issue. However, at no point did Caterpillar inform Northwest Recycling, through service letters or otherwise, about the Defect.

38.     On September 20, 2018, a subsequent repair was needed under warranty when there was "oil all over the machine" due to a loose fitting.

39.     On October 15, 2018, Northwest Recycling needed an additional repair under warranty when oil was once again found in the coolant.  This repair required installing an entirely new engine in the product.

40.     On November 27, 2018, after the engine was replaced, Northwest Recycling needed additional repairs due to a high oil level.  In inspecting the engine, Alban Tractor Company "found damaged top O-ring" and "found hair line vertical crack passing from below the top O-ring, through [injector] and extending above [injector]."  Another repair was conducted under Caterpillar's warranty.

41.     At all relevant times, the machine purchased by Northwest Recycling was covered by Caterpillar's standard warranty and Northwest Recycling complied with all of its obligations under the Caterpillar warranty.

42.     At all relevant times, Caterpillar failed to adequately repair the Defect because it did not notify Northwest Recycling of the Defect and remediate the problem.  It waited until Northwest Recycling's RotoChopper broke down before fixing the problem which caused Northwest Recycling to lose profits and suffer business reputational harm when it could not service its customers.  Specifically, Northwest Recycling suffered tens of thousands of dollars of lost revenue while its engine, that it had bought less than a year earlier, was being repaired.

43.     Despite knowing that Northwest Recycling and the members of the Class had

- 7 -

bought engines with the Defect that failed to perform wholly, or in substantial part, Caterpillar responded by failing to properly fix or recall Engines with the Defect.

44.     Neither Caterpillar, nor any of its dealers or representatives, informed Northwest Recycling that the Engine was defective, or of Caterpillar's misrepresentations and omissions associated with the Defect.  Rather, on December 19, 2019, Caterpillar sent Northwest Recycling a letter informing it that its standard warranty was going to expire shortly and asked whether Northwest Recycling wanted to purchase Extended Service Coverage.  That is to say, despite Caterpillar's knowledge or the fact that it should have known about the Defect, Caterpillar used its Liner's failures in an effort to coax Northwest Recycling into purchasing an extended warranty.

45.     Had Northwest Recycling been notified of the Defect, it would not have purchased the product or it would have paid substantially less.

46.     Northwest Recycling has suffered ascertainable losses as a result of Caterpillar's misrepresentations and omissions associated with the Defect.  Northwest Recycling seeks recovery of all actual damages (including direct, incidental, and consequential damages).

47.     Northwest Recycling's experience mirrors that of thousands of other owners and lessees of products with the Defects.

**B.     Defendant**

48.     Caterpillar is an Illinois citizen as Illinois is home to its principal place of business in  Deerfield, Illinois.  Caterpillar is the "world's leading manufacturer of constructing and mining equipment, diesel and natural gas engines, industrial gas turbines and diesel-electric locomotives."  In 2017, it had sales and revenues of over $45 billion.[1]

---

[1] Caterpillar, Inc., 2018 Annual Report (Form 10-K), Feb. 15, 2018.

1729489.5

### III.    JURISDICTION AND VENUE

49.    This Court has original subject matter jurisdiction over this Class Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2).  Plaintiffs are citizens of Kansas, Maryland, and Texas.  Caterpillar is a corporation organized under the laws of Delaware, with its principal place of business in Illinois.  As a result, the named Plaintiffs, Class members, and Caterpillar are citizens of different states within the meaning of 28 U.S.C. §§ 1332(c), 1332(d)(2)(A), and 1332(d)(10).

50.    On information and belief, the proposed Class exceeds 100 persons as thousands of products containing the Engines were sold.  Pursuant to 28 U.S.C. § 1332(d)(6), the aggregate amount of the Class members' claims substantially exceeds $5,000,000, and thus, exceeds the requisite amount in controversy set forth in 28 U.S.C. § 1332(d)(2).  The "local controversy exception" and "home state exception" to jurisdiction under 28 U.S.C. § 1332(d)(2), as set forth under 28 U.S.C. § 1332(d)(4)(A) and (B), do not apply here.

51.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a), (b) and (c) on the grounds that all or a substantial portion of the acts giving rise to the violations alleged herein occurred in this judicial district.

### IV.    CHOICE OF LAW

52.    Caterpillar is an Illinois citizen, headquartered in Illinois and conducted all relevant business, related to these claims in and from Illinois, including issuing its warranties.  As a result, the claims of Plaintiffs and all Class members have substantial contacts with Illinois, such that application of Illinois law to these claims is neither arbitrary nor unfair.  Illinois has a substantial relationship to the claims of all Class members, and Illinois has a greater interest than any state in the claims asserted here.

53.    In the alternative, the law of each state in which Plaintiffs and Class members

- 9 -

purchased or leased the Caterpillar Products, and/or in which they reside, can be applied to Plaintiffs and Class members (as alleged in the separate State Sub-Classes).

## V.     FACTUAL ALLEGATIONS

### A.     Use of Cylinder Liners

54.     The cylinder liners that Caterpillar uses are typically used in complicated commercial propulsion engines because they offer the advantage of being replaceable parts.

55.     The cylinder liner, sometimes referred to as a sleeve, is a "cylindrical component that is placed in an engine block to form a cylinder.  It is one of the most important functional parts to make up the interior of an engine and it gives a wear protective surface for piston and piston rings."[2]

56.     The cylinder wall is "under high temperature and high pressure, with the piston and piston rings sliding at high speeds."  This sliding is possible due to the use of oil that lubricates the part.[3]

57.     As experts note, "the material of a liner must withstand the extreme heat and pressure developed within the combustion space at the top of the cylinder and, at the same time, must permit the piston and its sealing rings to move with a minimum of friction."[4]

58.     Further, the liner must be corrosion resistant and bore resistant given the fact that there is metal-to-metal contact between the cylinder liner and the bore which can lead to both wear and corrosion degradation.

59.     For this reason, cast iron is "the material most commonly used for liner

---

[2] Analysis of Engine Cylinder Liners, Int'l Research Journal of Eng'g & Tech, Vol. 2, Issue 9, December 2015.
[3] *Id.*
[4] *Id.*

- 10 -

construction" although the article notes that steel is "sometimes used."[5]

60.     Caterpillar's liners, upon information and belief, used steel liners throughout the class period which have led to the Defect.

61.     Properly designed and manufactured cylinder liners will be wear-resistant and have enough hardness because the cylinder liner is "exposed to high temperatures while operating within the internal combustion engine" and "during the reciprocating motion of the piston, the piston will come in contact with the inner surface of the cylinder liner."

62.     Further, they must be concentric to allow for a smooth bore and to allow oil to be distributed evenly.

63.     Caterpillar's cylinder liners are "fitted into engine blocks and prevent pistons from wearing through cylinder bores."

64.     The cylinder liners are necessary to the Caterpillar engines working effectively.

**B.     Nature of the Defect**

65.     The Liners are necessary to the Caterpillar engines working effectively.  The Defect, however, rendered them likely to crack and cause oil and coolant to mix in the engines.

66.     Specifically, metallurgical analysis demonstrates that the Liners have "residual stresses" that are locked during the heating process.  These residual stresses are apparent in the upper portions of the Liners, where the cracking typically occurs.

67.     Residual stresses can cause the cylinder to no longer be concentric and instead have bowed portions.  This failure can lead to cracking due to the inconsistency in hardening and imperfect shape.

68.     While the precise reasoning for the Defect is presently unknown to Plaintiffs,

---

[5] *Id.*

residual stresses can occur during the manufacturing process for the steel liners and likely occur uniformly across the Liners.

69.     This failure during the manufacturing process impacted the chemical composition of the Liners and led to cracking.

70.     This cracking allowed oil that is used to lubricate the pistons to mix with the coolant used in the Engine to keep it from overheating.  This mixture of oil and water causes the Engine to malfunction.

71.     Further, while the precise reasoning for the Defect is presently unknown to Plaintiffs, proper testing by Caterpillar should have led to the discovery and fixing of the Defect.

72.     As a result of the Defect, Plaintiffs and Class members also experienced repeated instances of engine overheating, engine failure, oil in the radiator, and other issues with their Engines that led to excessive downtime and prevented the Caterpillar products from functioning as warranted and represented and as reasonable purchasers and lessees would expect.

73.     The Defect also rendered the Caterpillar products unreasonably dangerous at the time they were purchased or leased.  The Defect can lead to and has led to sudden breakdowns. This causes danger to the users and of the Caterpillar products and those nearby as the products are often engaging in industrial or agricultural tasks and Caterpillar's maritime products can be stranded in bodies of water.

**C.      Impacted Caterpillar Engines**

74.     Plaintiffs own products containing the C-18 engine, however, on information and belief, the C-32 engine has the same Defect.

75.     Caterpillar's C-18 and C-32 engines that are used for marine purposes include yachts and other charter boats that venture far offshore.  An engine failure in a marine use product caused by the Defect is particularly dangerous given the possibility of a boat being

- 12 -

stranded at sea with an engine that cannot operate.

**D.    The Caterpillar Warranties**

76.    Caterpillar's C-18 and C-32 engines are covered by the same warranty which is effective "with sales to the first user on or after June 1, 2012."[6]

77.    Plaintiffs and other Caterpillar product purchasers were generally aware that warranties came standard with the Engines.  Plaintiffs would not have purchased or leased the Engines without Caterpillar's warranties.  Accordingly, the warranty forms part of the basis of the bargain.

78.    The Warranty states that the products are "free from defects in material and workmanship."  It covers 24 months or 3,000 hours which comes first.  Moreover, the warranty on the cylinder block casting and cylinder head casting are "warranted against defects in material and workmanship for 36 months after date of delivery to the first user."[7]

79.    Caterpillar's marine products, which apply to some C-18 and C-32 engines, are covered by a similar warranty which likewise states that the products are "free from defects in material and workmanship."[8]

80.    Any attempt by Caterpillar to limit its warranty obligations with respect to the Defect is unconscionable and therefore unenforceable, and any attempt by Caterpillar to limit or exclude remedies fails of its essential purpose and is therefore unenforceable, in light of the fact that (i) the Defect in the Engines existed at the time of sale, and manifested both within and

---

[6] Caterpillar Limited Warranty, New 3000 Family, C0.5 through C4.4 and ACERT Industrial Engines Worldwide,
https://www.energypower.com.au/live/extranet/Manuals/Additional%20Caterpillar%20Informati on%20Files/Warranty.pdf (last visited Jan. 6, 2020).
[7] *Id.*
[8] Caterpillar Limited Warranty, Marine Products, https://pdfslide.net/documents/standard-warranty-period-mak-products-worldwideself5393-01-effective-with-sales.html  (last visited Jan. 6, 2020).

- 13 -

outside the warranty period; (ii) Caterpillar had actual knowledge of the Defect prior to sale, knowledge that Plaintiffs did not have and could not have discovered in the exercise of reasonable diligence prior to purchase or lease; (iii) Caterpillar unilaterally drafted the express warranties described herein and presented them on a take-it-or-leave-it basis post-sale; (iv) Caterpillar either failed to notify Plaintiffs and Class members of the Defect; and (v) when presented with Engines for repair under warranty, Caterpillar was unable to and did not fix the problem, but merely replaced defective parts/systems with the same or similar defective parts/systems, thereby ensuring additional failures during and after expiration of the warranty period.

> **E.     As a Result of the Defect, the Caterpillar Products Repeatedly Fail, Uniformly Injuring Proposed Class Members.**

81.     Many owners and lessees of the Products containing the Engines have repeatedly repaired or replaced the Liners and/or other parts damaged by the Liners, often at their own expense, and often after Caterpillar failed to properly repair them during the warranty.  Those that have not already failed-and those that have been "repaired" by Caterpillar under warranty by replacing defective parts/systems with defective parts/systems-are substantially certain to fail well before their intended and expected useful life.

82.     Indeed, Plaintiffs and Class members experienced failures that stemmed from the residual stresses in the Liners that inevitably lead to the Defect.  The Defect has caused, and is substantially certain to continue to cause, the Engines to fail repeatedly within their intended and expected useful life.  For this reason, all Class members have been injured uniformly. Among other things, all Class members paid a higher price than the one that would have prevailed in the market had the Engines' Defect been known outside of Caterpillar.

### F.     Caterpillar's Authorized Dealers

83.     Caterpillar provides a package of goods and services to buyers of its Engines by manufacturing and distributing its products through a nationwide network of authorized dealers.

84.     Caterpillar's authorized dealers have actual authority from Caterpillar to act as agents for Caterpillar in connection with the marketing, advertising and selling of Caterpillar engines with the Liners.

85.     Upon information and belief, Caterpillar's authorized dealers rely almost exclusively on materials and training received from Caterpillar when making representations about Caterpillar engines to their customers.

86.     Caterpillar regularly provides authorized dealers with branded literature, signage, and training materials for use in promoting, selling and financing the purchase or lease of Caterpillar engines to customers.

87.     Caterpillar boasts of its authorized dealers on its website, note that it has "one of the most extensive coverage networks across North America" and that "dealer locations fulfill 98 percent of parts orders within 24 hours."[9]   They also mention their "knowledgeable sales representatives," "factory trained and certified service technicians," "preventative maintenance services," and "customer support agreements."[10]

88.     Potential customers are also encouraged to visit the "cat.com" website when seeking information about Caterpillar engines.

89.     The "cat.com" website contains informational materials and statements to aid dealers and induce the customer to purchase or lease Caterpillar products.

_____

[9] Dealer Network and Parts Availability, Caterpillar, https://www.cat.com/en_US/articles/solutions/agriculture/compact-track-loaders-dealer-network.html (last visited Jan. 6, 2020).
[10] *Id.*

90.     Upon information and belief, Caterpillar provides the above-described training and information with the intention that its authorized dealers rely almost exclusively on information provided by Caterpillar when making representations to potential customers and inducing customers to purchase or lease Caterpillar engines.

91.     Upon information and belief, in exercise of the authority granted to them by and at the direction of Caterpillar, authorized dealers relied upon such training and information when they marketed and sold the engines to Class members, including in the course of making the misrepresentations and omissions associated with the Defect, as detailed herein.

### G.     Caterpillar Concealed the Defect

92.     Caterpillar knew or should have known about the Defect after several months of selling the Liners.  This is so because there were many public complaints about the Defect and Caterpillar regularly receives claims made under the applicable warranties about its products.

93.     Specifically, on June 18, 2018, Quality Organic Products filed an individual lawsuit against Caterpillar and Holt Texas, Ltd. d/b/a Holt Cat in the District Court of Bexar County, Texas, 166th Division, Cause No. 2018-CI-11210.  That lawsuit alleged that the Defect manifested itself in Plaintiff's C-18 engine and that one repair failed to address the Defect causing additional damages to Plaintiff.  It also alleged that Caterpillar failed to disclose the defect with Quality Organic Products' Rotochopper.

94.     Moreover, in another state, Morning Star Farms' interactions with Caterpillar's authorized dealers also demonstrated their awareness of product owners' complaints about the Liner.  In fact, Caterpillar's authorized dealer reached out to Morning Star Farms before its Liner cracked to ask if oil and water had mixed in its engine.

95.     Further, the repair of Morning Star Farms' and Northwest Recycling's engines demonstrated the existence of service letters from Caterpillar.  These service letters which were

- 16 -

in the possession of Caterpillar's authorized dealers demonstrated that Caterpillar informed its authorized dealers—but not product owners—of the Defect.

96.     Nonetheless, Caterpillar chose not to inform Plaintiffs and Class members of its findings.  Further, Caterpillar did not inform Plaintiffs and Class members of their determination that the Liner should be replaced completely by a different product that could be retrofitted into the Liners.

97.     Instead, Caterpillar's dealers and Caterpillar simply replaced the Liners when they became defective, but did not inform Class members of their rights.

98.     Caterpillar is aware that thousands of its customers are using defective Liners that could break down at any point and should be replaced. Caterpillar is also aware that these Liners can be used for maritime purposes, leading to the likely result of class members being stranded in the ocean after Caterpillar concealed the Defect.

**H.     Caterpillar's Representations Regarding Its Engines**

99.     Despite Caterpillar's knowledge of the Defect, it failed to inform Plaintiffs and Class members of the Defect, and it represented that its Engines: were free of defects and that any problems experienced with the Engines would be repaired by an authorized Caterpillar service center.

100.     Caterpillar represented on its website about the quality of the C-18 engine despite knowledge of the defect. Its website describes the C-18 engine as having "Reliable, Quiet, and Durable Power" and says it has "World-class manufacturing capability and processes coupled with proven core engine designs assure reliability, quiet operation, and many hours of productive life."  With respect to "quality," the website states that "Every Cat engine is manufactured to stringent standards in order to assure customer satisfaction."

101.     The C-32 engine is also represented on Caterpillar's website as having "World-

- 17 -

1729489.5

class manufacturing capability and processes coupled with proven core engine designs assure reliability, quiet operation, and many hours of productive life."

102.    Upon information and belief, Plaintiffs assert that Caterpillar made representations regarding reliability, performance, and durability to all Plaintiffs and Class members, directly and/or through its authorized dealer network, with the intention of inducing Plaintiffs and Class members to purchase or lease these defective engines.

## I.    The Defect Is Widespread and Harms the Class

103.    Contrary to Caterpillar's representations regarding the fitness, durability, and quality of Caterpillar's engines, Plaintiffs and the Class experienced numerous repeated breakdowns related to the Defect.  Upon information and belief, Caterpillar was aware of numerous complaints regarding engine failures as a result of the Defect and the potential dangers related to it.  Caterpillar failed to repair the problem despite the engine owners' repeated complaints to and visits at Caterpillar service centers.  These Defect-related breakdowns, and subsequent periods of attempted repair by Caterpillar service centers, harmed Plaintiffs and the Class since they were unable to operate their machines for extended periods of time.

## VI.    TOLLING OF STATUTES OF LIMITATIONS

104.    **Discovery Rule.**  Plaintiffs' claims accrued upon discovery that the Liners in Caterpillar engines were defective in that it led to the Liners cracking and causing the repeated failure of the engines, and the Defect could not be repaired.  While Caterpillar knew, and concealed, the fact that the Engines have a Defect that causes failures, Plaintiffs and Class members could not and did not discover this fact through reasonable diligent investigation until after they experienced failures, could reasonably exclude other potential causes of the failures, learned that warranty "repairs" by Caterpillar did not solve the problem, and discovered that the Liners themselves caused the failures.

- 18 -

105. **Active Concealment Tolling.** Any statutes of limitations are tolled by Caterpillar's knowing and active concealment of the fact that the engines suffered from an inherent Defect. Caterpillar kept Plaintiffs and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs. The details of Caterpillar's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. Plaintiffs could not reasonably have discovered the fact that their Engines suffered from an inherent Defect that would cause repeated and significant failures.

106. **Estoppel.** Caterpillar was and is under a continuous duty to disclose to Plaintiffs and all Class members the true character, quality, and nature of the engines. At all relevant times, and continuing to this day, Caterpillar knowingly, affirmatively, and actively misrepresented and concealed the true character, quality, and nature of the Engines. The details of Caterpillar's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. Plaintiffs reasonably relied upon Caterpillar's affirmative misrepresentations and knowing, affirmative, and/or active concealment. Based on the foregoing, Caterpillar is estopped from relying upon any statutes of limitation in defense of this action.

107. **Equitable Tolling.** Caterpillar took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and/or leased the Caterpillar Products with the defective Liners in the engines. The details of Caterpillar's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. When Plaintiffs learned about this material information, they exercised due diligence by

- 19 -

1729489.5

thoroughly investigating the situation, retaining counsel, and pursuing their claims. Caterpillar fraudulently concealed its above-described wrongful acts. Should such be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## VII.    CLASS ALLEGATIONS

108.    The named Plaintiffs bring this action as a Class Action pursuant to Rules 23(a), 23(b)(2) 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure.

### A.    Class Definitions

109.    The Classes are defined as follows:

a.    **Nationwide Declaratory and/or Injunctive Relief Class**

All persons and entities residing in the United States who currently own or lease a Caterpillar C-18 or C-32 engine.

b.    **Nationwide Damages Class**

All persons and entities residing in the United States who purchased or leased a Caterpillar C-18 or C-32 Engine.

c.    **State Sub-Classes**.

Plaintiffs also bring this case on behalf of individuals in certain State Sub-Classes, in the event it Illinois law does not apply to the claims of a particular Sub-Class.

All persons and entities residing in [State] who purchased or leased a Caterpillar C-18 or C-32 Engine and reside in that specific state.

d.    **Issues class**

In the alternative to the damages classes, it is appropriate for the Court to certify particular common issues, such as whether the Liners are defective, for class treatment.

110.    Excluded from the Class definitions are Caterpillar, its agents, affiliates, and employees; the Judge(s) assigned to this matter; and any member of the Judge(s)' staff and immediate family.

- 20 -

1729489.5

111.     Claims for personal injury are specifically excluded from the Class definitions.

**B.      The Prerequisites of Rule 23(a) Are Satisfied.**

112.     *Numerosity*.  The requirements of Rule 23(a)(1) are satisfied in that there are too many Class members for joinder of all of them to be practicable.  On information and belief, each of the proposed Classes includes thousands of members.  The Classes, as defined above, meet the numerosity requirement.

113.     *Commonality*.  The claims of the Class members raise numerous common issues of fact and/or law, thereby satisfying the requirements of Rule 23(a)(2).  These common legal and factual questions-the answers to which will drive resolution of the litigation-may be determined without the necessity of resolving individualized factual disputes concerning any Class member, and include, but are not limited to, the following questions:

a.      Whether the Caterpillar Engines contain the Defect;

b.      Whether the complained-of defect caused the damages of Plaintiffs and other members of the Class;

c.      Whether the Caterpillar Engines are defectively designed and/or manufactured such that they are not suitable for their intended use;

d.      Whether the Caterpillar Engines suddenly and dangerously fail;

e.      Whether the Defect is a necessary cause of failure of the Engines and resulting damages;

f.      Whether the Caterpillar Engines are substantially likely to fail before the end of their intended useful life as a result of their defective design and/or manufacture;

g.      Whether Caterpillar had actual or constructive knowledge of the Defect but failed to disclose it to Plaintiffs or the Class;

h.      Whether Caterpillar fraudulently concealed from and/or failed to disclose

to Plaintiffs and Class members that Caterpillar Engines were inherently defective and dangerous and prone to fail prematurely;

i.      Whether Caterpillar failed to adequately warn Plaintiffs and Class members of the inherent defects and dangers posed by the Caterpillar Engines;

j.      Whether Caterpillar dealerships were unable to properly repair the Defect, such that Caterpillar failed to honor its warranty obligation to properly repair the Engine during the warranty period;

k.      Whether Plaintiffs and other members of the Class have been damaged and, if so, what is the proper measure of damages; and

l.      Whether Caterpillar has acted or refused to act on grounds generally applicable to the Class.

m.      Whether Defect-related failures are covered by the Caterpillar's warranties;

n.      Whether limitations on the Caterpillar warranties are invalid or unenforceable;

o.      Whether Caterpillar had duty to disclose to Plaintiffs and all Class members the true character, quality, and nature of the Engines and the Defect;

p.      Whether Caterpillar breached obligations to Plaintiffs and the Class members imposed by express and implied warranties, implied contracts, and other common law doctrines.

114.    *Typicality*.  The claims of the named Plaintiffs are typical of the unnamed Class members because they have a common factual source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3).  For example, the named

Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all Class members were injured or damaged by the same wrongful practices in which Caterpillar engaged, namely the manufacture and sale of Engines with the Defect and the intentional concealment of the Defect.

115. *Adequacy of Representation*. The requirements of Rule 23(a)(4) are satisfied in that each named Plaintiff has a sufficient stake in the litigation to prosecute its claims vigorously on behalf of the Class members, and each named Plaintiff's interests are aligned with those of the proposed Class. There are no defenses of a unique nature that may be asserted against any Plaintiff individually, as distinguished from the other members of the Class, and the relief sought is common to the Class. No Plaintiff has any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and no Plaintiff has any conflict with any other member of the Class. Plaintiffs have retained competent counsel experienced in class action litigation, including product defect and, specifically, vehicle defect class actions, to represent them and the Class members in this litigation.

116. In addition to meeting the requirements specified in Rule 23(a), the Classes are easily ascertainable through a combination of the use of Caterpillar's, purchasers', and lessees' records, publication of notice, visual inspection of the Engine and/or its label, and verification by photograph. Upon information and belief, Caterpillar, its authorized dealers, and its service centers keep records of purchasers, service records, and warranty claims data. Where the records of Caterpillar, its authorized dealers, and its service centers may be insufficient, provision of notice can supplement class identification efforts, and purchasers or lessees responding to the class notice can verify that they are class members through their purchase records, and maintenance and repair records.

## C. The Prerequisites of Rule 23(b)(2) Are Satisfied.

117. Class members who might need future repairs to or replacement of the Engine or who received an ineffective repair seek a declaration that there is an inherent flaw in the Engine, that the warranties extend to them, and that they are entitled to final equitable relief, or to specific performance of the warranty when any future Liner-related failure occurs. The requirements of Rule 23(b)(2) are satisfied since the claim for declaratory relief is based upon Caterpillar's systemic policies and practices, making final declaratory relief, with respect to the class as a whole, appropriate.

118. Caterpillar's actions are generally applicable to the Class as a whole, and Plaintiffs seek uniform equitable relief with respect to the class as a whole.

## D. The Prerequisites of Rule 23(b)(3) Are Satisfied.

119. *Rule 23(b)(3): Predominance*. The Rule 23(b)(3) predominance requirement is satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation and predominate over questions affecting only individual members of the Class. The central issues in this litigation are the same for all class members: whether the Engines suffered from the Defect, whether Caterpillar knew of the Defect, what Caterpillar did in response to its knowledge, and the scope and applicability of Caterpillar's warranties. These common issues predominate over any individual issues.

120. *Rule 23(b)(3): Superiority*. The Rule 23(b)(3) superiority requirement is also satisfied. Class action treatment is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is economically unfeasible and procedurally impracticable. The expense of individual Class members prosecuting separate claims is large, and even if every Class member could afford individual litigation, the court system would be unduly burdened by individual litigation in such

- 24 -

cases. Individual litigation would also present the potential for varying, inconsistent or contradictory judgments while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation. As a result, it is desirable to concentrate litigation in this forum. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. Relief concerning Plaintiffs' rights under the laws herein alleged and with respect to the Class is proper.

**E.      The Prerequisites of Rule 23(c)(4) Are Satisfied.**

121.      In the event that common questions do not predominate for the action as a whole, common questions predominate for important issues that will advance the resolution of this action, including whether the Liners are defective and whether Caterpillar knew of the Defect prior to sale.

**VIII.   CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**CLAIM FOR DECLARATORY AND/OR INJUNCTIVE RELIEF**
**All Plaintiffs and the Nationwide Class or, in the alternative, on behalf of all Plaintiffs and all State Sub-Classes**

122.      As illustrated in the foregoing allegations, there is an actual controversy between Caterpillar and Plaintiffs concerning: (1) whether the Engines have an inherent Defect that causes failures; (2) whether Caterpillar knew, or should have known, of the Defect; (3) whether Caterpillar knew, or should have known, that the Defect would impact its Engines; (4) whether Caterpillar knew, or should have known, that no amount of warranty service would cure the Defect; (5) whether Caterpillar should have recalled its Engines with the Defect; and (6) whether Caterpillar should have informed Engine owners of the Defect.

123.      Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, this Court may

- 25 -

"declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," provided that the declaratory relief requested does not fall within any of the exemptions set forth in the Act.

124.    Accordingly, Plaintiffs pray this Court declare that:

        a.    The Caterpillar Engines at issue suffer from a Defect that is material and warrants disclosure since that Defect leads to engine failures, which might occur outside the warranty period;

        b.    Caterpillar warranted the Engines under its applicable warranties. Those warranties failed of their essential purpose; and

        c.    Because Caterpillar knew of the Defect and has not recalled the Engines, any repairs made to remedy the engine failures were insufficient to remediate the Defect known by Caterpillar to exist. Therefore, any time, mileage or other limitations on the applicable warranties are invalid and unenforceable;

125.    The declaratory relief requested does not fall within any of the exemptions set forth in the Declaratory Judgment Act.

### SECOND CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**All Plaintiffs with Caterpillar warranties and the Nationwide Class or, in the alternative, on behalf of all Plaintiffs with Caterpillar warranties and all State Sub-Classes**

126.    Caterpillar sold products equipped with defective Engines to Plaintiffs and members of the Class.

127.    In consideration of and as part of each sale, Caterpillar warranted that its Engines conformed to the Caterpillar Limited Warranty and any additional warranties provided broader coverage than the Caterpillar Limited Warranty such as the Silver Warranty

128.    Such warranties formed the basis of the bargain when Plaintiffs purchased or

- 26 -

leased the Caterpillar Engines.

129.     Caterpillar expressly warranted its Engines-all the while knowing that those Engines were contained a material Defect that was present at the time of sale and lease to Plaintiffs and Class members.

130.     When manufacturers and merchants such as Caterpillar sell goods with express warranties, they are obligated to provide goods that conform to those warranties.  As detailed in the foregoing allegations, Caterpillar's Engines did not conform to its express warranties.

131.     Plaintiffs met all of their obligations under the express warranty.  Plaintiffs used the Engines in a manner consistent with their intended use.  When the Defect, which was not known to Plaintiffs, caused failures in Plaintiffs' Engines, Plaintiffs brought their products to authorized dealers for repeated repairs.  Plaintiffs have performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Caterpillar or by operation of law in light of Caterpillar's unconscionable conduct described throughout this Complaint.

132.     Pursuant to the express warranties, Caterpillar was obligated to pay for or reimburse Plaintiffs and the Class members for costs incurred in replacing the defective Engines.

133.     Pursuant to the express warranties, Caterpillar also was obligated to properly repair the Defect.

134.     Caterpillar breached (and continues to breach) the above-described express warranties by (i) failing and refusing to conform the Engines to the express warranties, (ii) failing and refusing to properly repair or replace the defective Engines in Plaintiffs' and Class members' products when Plaintiffs and Class members presented the products for repair, and/or (iii) failing to notify Plaintiffs and Class members with Engines containing the Defect of the

- 27 -

need to replace the Liner.

135.    Plaintiffs provided Caterpillar with actual notice of the breach of the express warranties.

136.    Caterpillar had actual knowledge of, and/or received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such knowledge and notice, failed and refused to offer an effective remedy.

137.    Upon information and belief, Caterpillar has received numerous complaints and other notices from customers and dealers advising them of the Defect at issue in this litigation.

138.    Any attempt by Caterpillar to limit its express warranties in a manner that would exclude or limit coverage for the Engines with respect to claims based upon the Defect is unconscionable since (i) the Defect was present as of the time of sale or lease; (ii) Caterpillar knew or should have known about the Defect prior to offering the Engines for sale; and (iii) Caterpillar concealed and did not disclose the Defect, and did not remedy the Defect prior to sale or lease (or afterward).  Any effort by Caterpillar to disclaim or otherwise limit liability for the Defect at issue is, therefore, null and void.

139.    Accordingly, Plaintiffs and Class members suffered damages caused by Caterpillar's breach of the express warranties and are entitled to recover damages as set forth herein.  Those damages include, but are not limited to, general damages (i.e., the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted); incidental damages; and consequential damages.

**THIRD CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY**
**All Plaintiffs and the Nationwide Class or, in the alternative, on behalf of all Plaintiffs with Caterpillar warranties and all State Sub-Classes**

140.    Caterpillar is and was at all relevant times a merchant with respect to the Engines.

- 28 -

141.    Caterpillar was and is in actual or constructive privity with all Plaintiffs and all Class members.

  a.  Plaintiffs had and continue to have sufficient direct dealings with Caterpillar and/or its authorized dealers, franchisees, representatives, and agents to establish any required privity of contract.  Caterpillar's authorized dealers, franchisees, representatives, and agents were not intended to be the ultimate consumers of the Engines and have no rights under the warranty agreements provided with the Engines.  The warranty agreements were designed for and intended to benefit only the ultimate product purchasers and lessees, i.e., Plaintiffs and Class members.

  b.  Privity is not required to assert this claim because Plaintiffs and the Class members are intended third-party beneficiaries of contracts between Caterpillar and its dealers, franchisees, representatives, and agents.

  c.  By extending express written warranties to end-user purchasers and lessees, Caterpillar brought itself into privity with all Plaintiffs and Class members.

142.    At all times relevant hereto, applicable law imposed upon Caterpillar a duty that the Engines be fit for the ordinary purposes for which Engines are used and that they pass without objection in the trade under the contract description.

143.    Caterpillar has not validly disclaimed, excluded, or modified the implied warranties or duties described above, and any attempted disclaimer or exclusion of the implied warranties was and is ineffectual.

144.    The Engines were defective at the time they left the possession of Caterpillar, as set forth above.  Caterpillar knew or should have known of this Defect at the time the purchase and lease transactions occurred.  Thus, the Engines, when sold and at all times thereafter, were

not in merchantable condition or quality because they are not fit for their ordinary intended purpose and they do not pass without objection in the trade under the contract description.

145.    Plaintiffs and Class members used the Engines in a manner consistent with their intended use and performed each and every duty required under the terms of the warranties, except as may have been excused or prevented by the conduct of Caterpillar or by operation of law in light of Caterpillar's unconscionable conduct.

146.    Caterpillar had actual knowledge of, and received timely notice regarding, the Defect at issue in this litigation and, notwithstanding such notice, failed and refused to offer an effective remedy.

147.    In addition, Caterpillar received, on information and belief, numerous complaints and other notices from customers advising of the Defect associated with the Engines.

148.    By virtue of the conduct described herein and throughout this Complaint, Caterpillar breached the implied warranty of merchantability.

149.    As a direct and proximate result of Caterpillar's breach of warranties, Plaintiffs and Class members suffered economic damage, including loss attributable to the diminished value of their Engines, loss of use of the products and other tangible property, as well as the monies spent and to be spent to repair and/or replace their Engines.

### FOURTH CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION
**All Plaintiffs and the Nationwide Class or, in the alternative, on behalf of all Plaintiffs with Caterpillar warranties and all State Sub-Classes**

150.    Caterpillar manufactured, distributed, and sold to Class members the Engines that they knew contained an inherently dangerous or defective condition.

151.    Caterpillar continued to manufacture, distribute, and sell to Class members the Engines after receiving substantial complaints of systematic product failure due to the dangerous

or defective condition.

152.    Caterpillar did not disclose this dangerous or defective condition to potential and actual purchasers and lessees, and the condition was not easily discoverable by them.

153.    Caterpillar knew or should have known of the defect in the Liners through an adequate application of its quality control process.

154.    Caterpillar omitted this information to induce Plaintiffs and Class members to purchase or lease its products, which were equipped with the defective Engines.

155.    Caterpillar made affirmative representations, as detailed in the foregoing allegations, regarding the Engines' reliability, performance, and quality, with the intent to induce Plaintiffs and the Class to purchase or lease its products, which were equipped with the defective Engines.

156.    Plaintiffs and Class members justifiably relied on Caterpillar's omissions and misrepresentations in that Plaintiffs and Class members paid more for the Engines than they would have had Caterpillar disclosed the defective condition and its effect on reliability, performance, and quality, or Plaintiffs and Class members would have purchased or leased different products altogether.

157.    Plaintiffs and Class members were harmed by Caterpillar's misrepresentations regarding the dangerous and defective condition of the Engines and are entitled to damages as a result in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
**All Plaintiffs and all State Sub-Class Asserted on behalf of all Plaintiffs and the Nationwide Class or, in the alternative, on behalf of all Plaintiffs with Caterpillar warranties and all State Sub-Classes**

158.    This claim is pled in the alternative, if Caterpillar is found not to have breached the terms of its express or implied warranty. Caterpillar has been unjustly enriched by the sale of

products containing the defective Engines to Plaintiffs and the Class members.

159.    Plaintiffs and the Class members conferred a benefit on Caterpillar, but Caterpillar failed to disclose its knowledge that Plaintiffs did not receive what they paid for and misled Plaintiffs and Class members regarding the qualities of the Engines, and the products containing these Engines, while profiting from this deception.

160.    Caterpillar also continues to be unjustly enriched by benefitting from, *inter alia*, (i) the saved cost of repairing the Defect, (ii) the shifted risk and expense of the defective and dangerous Engines to Plaintiffs and Class members, and (iii) the return on investment on all above-described amounts.

161.    It would be inequitable, unconscionable, and unjust to permit Caterpillar to retain the benefit of these profits that it unfairly obtained from Plaintiffs and the Class members.

162.    Plaintiffs and the Class members, having been injured by Caterpillar's conduct, are entitled to restitution or disgorgement of profits as a result of the unjust enrichment of Caterpillar to the detriment of Plaintiffs and Class members.

**SIXTH CAUSE OF ACTION**
**NEGLIGENCE**
**All Plaintiffs and the Nationwide Class or, in the alternative, on behalf of all Plaintiffs with Caterpillar warranties and all State Sub-Classes**

163.    Caterpillar owed Plaintiffs and the other Class members the duty to design and manufacture the Engines in such a way as to ensure that the Liners would not fail and the Defect would not occur.

164.    Caterpillar breached this duty by negligently designing and/or manufacturing the Engines, including, but not limited to, the negligent design and/or manufacture of the Engines' Liners as more fully described in this Complaint.

165.    As a direct and proximate result of Caterpillar's negligence, Plaintiffs and the

other Class members have sustained damages.

## PRAYER FOR RELIEF

WHEREFORE, on behalf of themselves and all others similarly situated, Plaintiffs demand judgment against Caterpillar on each Count of the Complaint and pray for the following relief:

1. Issue an Order certifying the Classes and/or any Subclasses the Court deems appropriate, appointing Plaintiffs and their counsel to represent the Classes, and directing that reasonable notice of this action be given by Caterpillar to all Class members;

2. Grant any reasonable request to amend this Class Action Complaint to conform to the discovery and evidence obtained in this Class Action;

3. Empanel a jury to try this matter;

4. Grant Plaintiffs and members of the Declaratory Relief Class the declaratory judgment and/or injunctive relief requested herein;

5. Award to Plaintiffs and the Class members all compensatory damages provided for and consistent with their claims for relief;

6. Award to Plaintiffs and the Class members all exemplary and/or punitive damages allowed by law that the Court deems appropriate;

7. Grant Plaintiffs and Class members their reasonable attorneys' fees and costs incurred in this litigation as allowed by law;

8. Award costs and expenses incurred in this action pursuant to Rule 54 of the Federal Rules of Civil Procedure;

9. Award pre-and post-judgment interest as allowed by law; and

10. Grant Plaintiffs and Class members such further relief as the Court may deem just and proper.

Dated: January 13, 2020

By: /s/ Shannon M. McNulty
Robert A. Clifford
Shannon M. McNulty
CLIFFORD LAW OFFICES, P.C.
120 N. LaSalle Street, 31st Floor
Chicago, Illinois 60602
Telephone: 312-899-9090
rclifford@cliffordlaw.com
smm@cliffordlaw.com

LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP
Kenneth S. Byrd (admitted to the N.D. Ill.
general bar)
222 2nd Ave S Suite 1640
Nashville, TN 37201
Telephone:  615-313-9000
kbyrd@lchb.com

Jason L. Lichtman (IL Bar #6290052)
Sean A. Petterson (*pro hac vice* forthcoming)
250 Hudson Street, 8th Floor
New York, NY 10013
Telephone:  212-355-9500
 jlichtman@lchb.com
spetterson@lchb.com

SERNA & ASSOCIATES PLLC
Enrique G. Serna (*pro hac vice* forthcoming)
Daniel E. Serna (*pro hac vice* forthcoming)
City View Office Building
10999 IH 10 West, Suite 305
San Antonio, TX 78230
Telephone:  210-472-2222
enrique@serna-associates.com
daniel@serna-associates.com

- 34 -

THE POWELL LAW FIRM
Jon Powell (*pro hac vice* forthcoming)
Mickey Johnson (*pro hac vice* forthcoming)
1148 East Commerce Street
San Antonio, TX 78205
Telephone:  210-225-9300
jon@jpowell-law.com
mickey@jpowell-law.com

*Attorneys for Plaintiffs*

## SIGNATURE ATTESTATION

Pursuant to the United States District Court for the Northern District of Illinois' General Order on Electronic Case Filing, General Order 14-0009(IX)(C)(2), I hereby certify that authorization for the filing of this document has been obtained from the signatories shown above and that each signatory concurs in the filing's content.

/s Shannon M. McNulty

Shannon M. McNulty