IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Texas Hill Country Landscaping, Inc., et al., | ) ) ) |
| Plaintiffs, | ) ) ) Case No.: 20-cv-0227 |
| v. | ) ) Honorable Joan B. Gottschall |
| Caterpillar, Inc., | ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Texas Hill Country Landscaping, Inc. d/b/a Quality Organic Products of Selma ("Quality Organic Products"); Morning Star Farms, Inc. ("Morning Star"); and Northwest Recycling, LLC ("Northwest Recycling") seek to represent a national class of purchasers and lessors of certain C-18 and C-32 engines manufactured and sold by defendant Caterpillar, Inc. ("Caterpillar"). *See* First Am. Class Action Compl. ("Am. Compl.") ¶¶ 107–09, ECF No. 8. Plaintiffs allege that these engines ("class engines") have a defective component called a cylinder liner. *See* Am. Compl. ¶¶ 1–3, 66–73. "When the [cylinder] Liner fails, oil and coolant mix, ultimately leading to engine failure. That failure requires expensive, time-consuming repairs in existing engines," according to plaintiffs' first amended class action complaint ("first amended complaint"). *Id.* ¶ 2. The first amended complaint has six counts: a claim for declaratory and injunctive relief, breach of express and implied warranty (counts II and III), negligent misrepresentation, unjust enrichment, and negligence. *Id.* at 25–32.

Caterpillar moves to dismiss the first amended complaint for lack of standing and in part for failure to state a claim. ECF No. 40. Caterpillar also asks the court to strike the first amended complaint's class action allegations under Rule 12(f) of the Federal Rules of Civil

1

Procedure. *Id.* Caterpillar's standing arguments and motion to strike both challenge plaintiffs' ability to represent the proposed class. Finding these arguments to be premature given that an agreed period of class certification and merits discovery is ongoing, the court denies Caterpillar's motion.

## I. Background

For purposes of deciding Caterpillar's motion to dismiss and motion to strike, the first amended complaint's well-pleaded facts must be accepted as true and viewed in the light most favorable to plaintiffs. *See Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)) (failure to state a claim); *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 n.19 (7th Cir. 2014) (challenge to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)); *AEL Fin., LLC v. Colarusso & Nozawa, Ltd.*, 2010 WL 11712478, at *1 (N.D. Ill. Feb. 5, 2010) (citing *Bobbit v. Victorian House, Inc.*, 532 F. Supp. 734, 737 (N.D. Ill. 1982)) (motion to strike under Rule 12(f)). The court summarizes the first amended complaint below in accordance with these standards.

### A. *The Alleged Defect*

A cylinder liner is an engine component intended to protect the engine from wear. *See* Am. Compl. ¶¶ 56, 64. Because cylinder liners are replaceable parts, they are often used in commercial propulsion engines. Am. Compl. ¶ 55.

Ordinary engine operation exposes the cylinder liner to "extreme" heat and pressure. Am. Compl. ¶ 58. The cylinder liner must be capable of withstanding this heat and pressure and must allow the piston to travel with minimal friction. Am. Compl. ¶¶ 58, 62. The cylinder liner must also resist corrosion due to its direct physical contact with other engine parts (the bore). Am. Compl. ¶ 59. Manufacturers most commonly use cast iron for cylinder liners, but plaintiffs

allege that during the class period Caterpillar used steel liners, leading to the alleged defect. Am. Compl. ¶¶ 60–61 (alleged upon information and belief). Caterpillar is alleged, on information and belief, to have used the same allegedly defective liners in all of its C-18 and C-32 engines manufactured in the early to mid-2010's until Caterpillar designed and deployed a replacement liner. Am. Compl. ¶ 73.

The allegedly defective liners had "an undue amount of 'residual stresses' that are locked during the heating process. These residual stresses are in the upper portions of the Liners . . . ." Am. Compl. ¶ 67. Residual stress can cause a cylinder's shape to change, and changes in shape can in turn lead to the liner cracking. Am. Compl. ¶ 68. If the liner cracks, oil and coolant can mix in the engine, causing the engine to overheat and to fail. *See* Am. Compl. ¶¶ 66, 70. "As a result of the Defect, Plaintiffs and Class members also experienced repeated instances of engine overheating, engine failure, oil in the radiator, and other issues with their Engines that led to excessive downtime . . . ." Am. Compl. ¶ 71.

### B. The Named Plaintiffs' Allegations

In December 2017, plaintiff Quality Organic Products, a Texas company providing agricultural products and services, bought a horizontal grinder for approximately $648,000. *See* Am. Compl. ¶¶ 6–7. The grinder came equipped with a Caterpillar C-18 engine. Am. Compl. ¶ 7. The engine began overheating approximately four months later, in March 2018, and oil was found in its radiator. Am. Compl. ¶ 9. A Caterpillar authorized dealer performed a repair that took two and a half weeks and included replacing the cylinder liner. Am. Compl. ¶¶ 10, 12. Four hours after the grinder returned to service, the "exact same problem occurred" and its engine again failed. Am. Compl. ¶ 12. The dealer told Quality Organic Products the engine's cylinder liner had cracked and would need to be replaced. Am. Compl. ¶ 13.

In January 2018, plaintiff Morning Star, a Kansas company, leased a hay grinder equipped with a Caterpillar C-18 engine. Am. Compl. ¶¶ 22, 23. Morning Star paid approximately $492,000 for the grinder. Am. Compl. ¶ 23. The hay grinder broke down "shortly after" Morning Star leased it because a cracked cylinder led to water and oil mixing in the engine. *See* Am. Compl. ¶¶ 24–26. The repair took 30–40 days. Am. Compl. ¶ 27.

In February 2018, plaintiff Northwest Recycling, a Maryland company, bought a "Rotochopper" equipped with a Caterpillar C-18 engine. Am. Compl. ¶¶ 35-36. Oil was detected in the engine's coolant within four months. *See* Am. Compl. ¶¶ 36-37. Documents associated with a June 2018 repair state that the number two cylinder liner had cracked. Am. Compl. ¶ 37. Subsequent repairs were performed in September, October, and November 2018, including a complete engine replacement. *See* Am. Compl. ¶¶ 39-41.

C. *Class Action Allegations*

In their first amended complaint, plaintiffs propose two nationwide classes comprised of all purchasers or lessors of Caterpillar engines equipped with the allegedly defective cylinder liners. One class would be for the purpose of issuing, or denying, declaratory and injunctive relief, and the other would be a nationwide damages class. *See* Am. Compl. ¶¶ 107(a), (b). Plaintiffs maintain that Illinois's substantive law would govern the claims of all class members. Am. Compl. ¶ 53 (choice of law allegations). But if the choice of law analysis ultimately points to the law of one or more other states, plaintiffs propose certifying state-specific subclasses. *See* Am. Compl. ¶ 107(c). As a further alternative to the damages class, plaintiffs would seek certification of one or more issues for class-wide resolution, such as whether the liners are defective. Am. Compl. ¶ 107(d).

4

### D. Procedural Posture

Caterpillar attached the declarations of two of its employees, Gary Mueller and Jesse Quick, to its memorandum in support of its motion to dismiss.[1] ECF No. 42 Exs. A, B. The declarations describe in general terms some alleged differences between the design, manufacture, and applications of Caterpillar's C-18 and C-32 engines. *See generally id.* For instance, both aver that different Caterpillar divisions design and manufacture its C-18 and C-32 engines. Mueller Decl. ¶¶ 5-6; Quick Decl. ¶¶ 6–7. Caterpillar relies on these declarations solely to support its motion to dismiss for lack of standing. Response 2, ECF No. 46.

One day after defendants filed their pending motion to dismiss and to strike, the parties filed a joint motion asking the court to adopt their schedule for pretrial discovery. ECF No. 43. The motion was granted. ECF No. 44. The parties jointly sought and obtained a six-month extension of all discovery deadlines on February 25, 2021. *See* ECF No. 62. Under the revised schedule proposed by the parties and adopted by the court, fact discovery will be completed by October 1, 2021. Am. Scheduling Order 1, ECF No. 65. After expert discovery, motions for class certification are due March 16, 2022. *Id.*

## II. Article III Standing

As the party invoking the court's jurisdiction, each plaintiff must demonstrate Article III standing by showing that it "has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct and is likely to be redressed by a favorable judicial decision." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (citations omitted). The court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the

---

[1] Caterpillar filed an original and a corrected memorandum of law in support of its motion. ECF Nos. 41, 42. For simplicity's sake, the court refers to the corrected memorandum, ECF No. 42, as the memorandum throughout this opinion.

complaining party." *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)) (other citation omitted). The complaint "need only 'plausibly suggest' each element of standing." *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 278 (7th Cir. 2020) (citing *Silha*, 807 F.3d at 173–74).

Caterpillar does not dispute that the three named plaintiffs have standing to press their individual claims. *See* Mem. Supp. Mot. to Dismiss 4–11. This court agrees. Each named plaintiff alleges that it purchased or leased a C-18-equipped machine in 2017 or 2018. Am. Compl. ¶¶ 7, 23, 36. Due to the alleged defect detailed in the first amended complaint, the machines broke down and required extensive repairs, which inflicted direct and consequential damages (injury in fact). *Id.* at 2-8. The alleged defect is traceable to Caterpillar's alleged conduct. *See id.* ¶¶ 16, 18, 30-31, 44-45; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." (quotation and alteration omitted)).

Rather than attack the named plaintiffs' individual standing, Caterpillar challenges, under the heading of Article III standing, their fitness to represent the putative class because their injuries allegedly differ significantly from those of absent class members who purchased different products.[2] *See* Mem. Supp. Mot. to Dismiss 4-11. Caterpillar points to Mueller and

---

[2] By way of illustration, Caterpillar concludes its standing argument this way:

> Simply put, a C-18 engine in a Rotochopper grinder is not a "substantially similar" product to a C-32 engine in a fishing boat, or even a C-18 engine in a generator or a hydraulic pump. This is all the more true because Plaintiffs' claims focus on cylinder liners that will perform differently based on engine design, rod length, engine speed, conditions, and climate.

Mem. Supp. Mot. to Dismiss 11.

Quick's averments describing alleged differences between the design, purposes, distribution, and uses of Caterpillar's C-18 and C-32 engines. *See id.* at 9-11.

Caterpillar cites several district court decisions conducting a standing analysis at the pleading stage. *See Mem. Supp. Mot. To Dismiss 4-11.* These cases demonstrate a split among courts in this district. *See Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998–99 (N.D. Ill. 2017) (collecting cases and discussing split). In some of the decisions Caterpillar cites, the court held that named plaintiffs have no standing to assert claims based on products they did not purchase. *E.g., Porter v. NBTY, Inc.*, 2016 WL 6948379, at *3 (N.D. Ill. Nov. 28, 2016) (Shah, J.); *Pearson v. Target Corp.*, 2012 WL 7761986, at *1 (N.D. Ill. Nov. 9, 2012) (Zagel, J.). Other district courts have asked broadly whether the product used by the named plaintiff was substantially like products used by members of the proposed class. *E.g., Benson v. Fannie May Confections Brands, Inc.*, 2018 WL 1087639, at *6 (N.D. Ill. Feb. 28, 2018) (Ellis, J.); *Ulrich v. Probalance, Inc.*, 2017 WL 3581183, at *6 (N.D. Ill. Aug. 18, 2017) (Alonzo, J.).

For the following reasons, this court agrees with district courts in the Seventh Circuit that have concluded that "[w]hether the named plaintiffs 'may assert the rights of absent class members is neither a standing issue nor an Article III case or controversy issue but depends rather on meeting the prerequisites of Rule 23 governing class actions.'" *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016) (Leinenweber, J.); *see also Snyder v. U.S. Bank N.A.*, 387 F. Supp. 3d 867, 873 (N.D. Ill. 2019) (Kennelly, J.); *Supreme Auto Transp. LLC v. Arcelor Mittal*, 238 F. Supp. 3d 1032, 1037–38 (N.D. Ill. 2017), *aff'd sub nom. Supreme Auto Transp., LLC v. Arcelor Mittal USA, Inc.*, 902 F.3d 735 (7th Cir. 2018); *Liston v. King.com, Ltd.*, 254 F. Supp. 3d 989, 998–1002 (N.D. Ill. 2017) (Tharpe, J.); *In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 809-10 (N.D. Ill. 2017) (Durkin, J.); *In re Herbal Supplements Mktg.*

*& Sales Pracs. Litig.*, 2017 WL 2215025, at *6-7 (N.D. Ill. May 19, 2017) (St. Eve, J.). As the Supreme Court has repeatedly stated, "[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'"[3] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 n.6 (2016), *as revised* (May 24, 2016) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976)); *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

Indeed, the Supreme Court has held that courts may resolve "class certification issues" prior to Article III standing issues provided that they "are 'logically antecedent' to Article III concerns." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 816 (1999). And the Seventh Circuit has repeatedly warned against "conflat[ing] the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative." *Arreola v. Godinez,* 546 F.3d 788, 795 (7th Cir. 2008) (quoting *Payton v. Cty. of Kane*, 308 F.3d 673, 677 (7th Cir. 2002)) (disapproving dicta in *Harriston v. Chi. Tribune Co.*, 992 F.2d 697, 704 (7th Cir. 1993)). Instead, "the proper remedy for [a mismatch between the named plaintiffs' injuries and those of the class] is not dismissal of the entire action, but rather an order denying class certification and permitting the case to continue as an individual suit." *Payton,* 308 F.3d at 677; *see also Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (named plaintiff had standing; whether differences in 50 states' laws precluded certification of a national class was properly analyzed under Rule 23); *Arreola,* 546 F.3d at 795 (citing *Payton*, finding named plaintiff had standing and subsequently conducting a Rule 23 analysis). Here, as in *Payton*,

---

[3] Of course, a named plaintiff who lacks standing cannot "piggy-back on the injuries of the unnamed class members." *Payton v. Cty. of Kane*, 308 F.3d 673, 682 (7th Cir. 2002) (citing *Allee v. Medrano*, 416 U.S. 802, 828–29 (1974)) (other citation omitted). But no piggybacking is occurring here, for, again, all agree that the named plaintiffs have standing.

8

Caterpillar's arguments about the mismatch between the named plaintiffs' alleged injuries and those of the class members raise Rule 23 issues that logically precede Article III standing.

As stated above, the parties agree that the named plaintiffs have individual standing, and the court concurs. The court rejects Caterpillar's efforts to inject class certification issues into the standing inquiry, particularly while class certification discovery is ongoing. *See Payton*, 308 F.3d at 680 (declining to reach class certification "without a proper record").

### III. Motion to Strike Class Allegations

Reprising and elaborating upon its standing arguments, Caterpillar moves under Rule 12(f) of the Federal Rules of Civil Procedure to strike the first amended complaint's class action allegations as "facially defective." Mem. Supp. Mot. to Dismiss 11. Caterpillar's argument hinges primarily on its analysis of Illinois choice of law principles as applied to the claims of the proposed class. *See id.* at 12–15. Caterpillar asserts that the proposed classes described in the first amended complaint could not survive the rigorous class certification scrutiny required by Rule 23, as the class would fail on key Rule 23 requirements such as typicality, superiority, and predominance. Mem. Supp. Mot. to Dismiss 15–23; *see generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 347–48 (2011) (discussing requirements of Rule 23); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 810 (7th Cir. 2012) (same); *In re Bridgestone*, 288 F.3d 1012, 1018 (7th Cir. 2002). Plaintiffs dispute Caterpillar's choice of law analysis and argue that it would be premature to conduct a Rule 23 analysis and a choice of law analysis at the pleading stage. As with standing, the parties raise the threshold procedural question of how far, if at all, to delve into class certification issues while class certification discovery is ongoing.

Caterpillar cites no Seventh Circuit case striking class action allegations from a pleading. *See* Mem. Supp. Mot. to Dismiss 11–23. In the Seventh Circuit cases cited by Caterpillar, the court had the benefit of full class certification briefing. That briefing permitted the court to assess choice of law and other considerations germane to a proposed nationwide class with evidence about the composition of the proposed class in full view. *See In re Bridgestone*, 288 F.3d at 1015–18; *Isaacs v. Sprint Corp.*, 261 F.3d 679 (7th Cir. 2001); *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001); *In re Rhone–Poulenc Rorer Inc.*, 51 F.3d 1293 (7th Cir. 1995).

The procedural rule under which Caterpillar moves, Rule 12(f), which governs pleadings generally, permits the court to strike "any insufficient defense or any scandalous, impertinent, or irrelevant matter" from a pleading. But Rule 23(d)(1)(D), a portion of the rule governing class actions, authorizes relief that is the functional equivalent of striking class allegations from the complaint: "In conducting an action under this rule, the court may issue orders that: . . . require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Because Rule 23 contains a procedural vehicle for eliminating class allegations from the complaint, courts in this district apply Rule 23 rather than Rule 12(f) to motions to strike class allegations. *See, e.g.*, *Carrol v. S.C. Johnsons & Son, Inc.*, 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018) (citing *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014)); *Cowen v. Lenny & Larry's, Inc.*, 2017 WL 4572201, at *4 (N.D. Ill. Oct. 12, 2017).

The Supreme Court has made clear that "Rule 23 does not set forth a mere pleading standard." *Wal-Mart*, 564 U.S. at 350. Nevertheless, Rule 23 has been used at the pleading stage to eliminate class action allegations that "are 'facially and inherently deficient,' particularly

10

when the dispute is not factual and discovery is unnecessary to resolve it." *Cowen*, 2017 WL 4572201, at *4 (citing *Cholly v. Uptain Grp., Inc.*, 2015 WL 9315557, at *3 (N.D. Ill. Dec. 22, 2015)); *see also* 3 William B. Rubenstein, et al., *Newberg on Class Actions* § 7:22 (5th ed. 2020) (surveying cases and concluding, "defendant motions to defeat certification prior to the completion of discovery are 'generally regarded with disfavor.'" (citations omitted)). If the issues are factual or discovery is likely to inform a class certification decision, little would be gained from striking class allegations from the complaint, for they would just reemerge later. Rule 23(c)(1)(C) explicitly empowers a district court that has stricken class allegations from the complaint to reverse course and certify a class prior to entry of judgment. *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1710–1711, 1715 (2017). Many courts in this district have therefore reasoned that "[b]ecause a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action a decision denying class status by striking class allegations at the pleading stage is inappropriate." *Carrol*, 2018 WL 1695421, at *5 (quoting *Boatwright v. Walgreen Co.*, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011)) (brackets in original; collecting additional cases); *see also Cook Cty. Coll. Tchrs. Union, Local 1600, Am. Fed'n of Tchrs., AFL-CIO v. Byrd*, 456 F.2d 882, 884–86 (7th Cir. 1972) (affirming grant of motion to strike a complaint's allegations based on stipulated evidentiary record compiled at preliminary injunction hearing); *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 338 F. Supp. 3d 875, 903 (N.D. Ill. 2018).

Though Caterpillar argues otherwise, the certification issues it raises are enmeshed in factual and legal issues that would benefit from full exploration after certification discovery is complete. On choice of law, for instance, Caterpillar relies primarily on *Cowen*. *See* Mem. Supp. Mot. to Dismiss 18, 22. The *Cowen* court struck a proposed nationwide consumer class

11

because "applying the warranty, unjust enrichment, and misrepresentation laws of fifty different states, or even the five states that comprise the multi-state class, is unmanageable on a class-wide basis because those states' laws conflict in material ways." *Cowen*, 2017 WL 4572201, at *4. The court in *Cowen* rested its decision on the failure of the plaintiffs to rebut the defendant's detailed choice of law analysis demonstrating that material conflicts of law made the proposed class unsuitable for certification. *See id.* (distinguishing *Rysewyk v. Sears Holdings Corp.*, 2015 WL 9259886 (N.D. Ill. Dec. 18, 2015)). The *Cowen* court held that the defendant making a motion to strike class allegations bears the burden to show that "specific variations of laws between specific states preclude class treatment." 2017 WL 4572201, at *4 (citing *Rysewyk*, 2015 WL 9259886, at *8).

      Caterpillar offers a comparatively superficial Illinois choice of law analysis here. In a diversity suit like this one, the court applies the choice of law rules of the forum state, here Illinois. *E.g., Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Caterpillar identifies the black letter tests allegedly applicable to tort and contracts claims, but it does not discuss the factors Illinois courts consider when determining what state has the most significant relationship to an issue: "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Zurbriggen*, 338 F. Supp. 3d at 903 (citing *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 901–02 (Ill. 2007)). Neither the first amended complaint nor the declarations attached to the pending motion shed any significant light on how these factors might ultimately apply to class members. Mueller and Quick's declarations contain generalizations about how C-18 and C-32 engines are designed,

sold, and allegedly used. *See* ECF No. 42 Exs. A, B. Because the ongoing discovery could significantly affect the choice of law analysis, conducting one now would be premature.

Furthermore, even if Caterpillar is right and the choice of law analysis will point to the laws of up to 50 states, Caterpillar has not shown that the conflicts of law it has identified are material enough to defeat certification at the pleading stage. Illinois courts apply forum (Illinois) law "unless an actual conflict with another state's law is shown." *Gunn*, 968 F.3d at 808 (citing *Bridgeview Health Care Ctr. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014)). Caterpillar identifies differences between the warranty, negligent misrepresentation, and unjust enrichment laws of various states at a high level of generality. *See* Mem. Supp. Mot. to Dismiss 22–24. How these alleged differences create an actual conflict affecting the specific claims of the named plaintiffs and class members has not been explained, however. *See id.* Here, all the court knows about the proposed class's composition comes from the first amended complaint, and the first amended complaint says only that the class is comprised of "thousands" of members who may, or may not, come from all 50 states. *See* Am. Compl. ¶¶ 107, 110. Per the first amended complaint, class members can be identified through purchase and maintenance records (¶ 114), but the court does not have those records. So which states' laws are at issue cannot be determined on this record, frustrating any analysis of whether the conflicts Caterpillar identifies are material. Because a choice of law analysis is premature, the court cannot rule out the possibility that there will be no material conflicts of laws or that, if there are, state-specific subclasses may be a manageable alternative in the event that certifying a national class proves unworkable. *See Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801-802 (7th Cir. 2013), *reaffirming prior opinion* 702 F.3d 359 (7th Cir. 2012).

For all of these reasons, the class certification issues Caterpillar raises must be resolved following class certification discovery and with the benefit of full briefing. This will permit the court to conduct the rigorous analysis Rule 23 requires.

### IV. Motion to Dismiss for Failure to State a Claim

Caterpillar's final set of arguments challenge the sufficiency of the first amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, Caterpillar contends that plaintiffs have failed adequately to plead essential elements of their breach of warranty, unjust enrichment, and negligent misrepresentation claims. Mem. Supp. Mot. to Dismiss 22–25. Caterpillar analyzes each named plaintiff's claims under the law of its respective state of incorporation—Texas, Kansas, and Maryland. *See id.* Plaintiffs respond that each claim has been adequately alleged under the respective state's law. Resp. to Mot. to Dismiss 24–27, ECF No. 46.

To survive a Rule 12(b)(6) motion to dismiss, the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged by the plaintiff as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

14

Although plaintiffs defend the first amended complaint's sufficiency under Texas, Kansas, and Maryland law, they also specifically object to Caterpillar's motion under Federal Rule of Civil Procedure 12(d). Resp. to Mot. to Dismiss 27. Rule 12(d) requires a court to treat a Rule 12(b)(6) motion as one for summary judgment if "matters outside the pleadings are presented to and not excluded by the court." Fed. R. Civ. P. 12(d). Before converting the motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* Mueller and Quick's declarations qualify as Rule 12(d) material because they were neither attached to nor referred to in the first amended complaint, and no party suggests that they are appropriate subjects for judicial notice. *See generally 188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080-1081 (7th Cir. 1997).

In reply, Caterpillar disclaims any reliance on Mueller and Quick's declarations to resolve its Rule 12(b)(6) arguments. Reply 2-3, ECF No. 47. Caterpillar urges the court to resolve its Rule 12(b)(6) motion based solely on the first amended complaint analyzed under the laws of Maryland, Texas, and Kansas. *See* Reply 12-14. Whether to convert a Rule 12(b)(6) motion is a discretionary decision. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 583 (7th Cir. 2009)).

The threshold choice of law question complicates the discretionary decision here. As discussed above and as the parties' briefing makes clear, the choice of law issues raised here require further factual and legal development. This is not a case in which the parties agree on what law applies. Plaintiffs address choice of law in the first amended complaint and in their briefing on the pending motion. *See* Am. Compl. ¶ 53; Response 13-18. Caterpillar cites no

15

authority allowing the court to disregard the first amended complaint's choice of law allegations; nor does Caterpillar point to any factual allegations in the first amended complaint that undermine plaintiffs' choice of law contentions. *See* Mem. Supp. Mot. to Dismiss 22–25. Thus, the facts necessary to conduct the choice of law analysis must come from outside the first amended complaint. *Cf. Thornton v. Hamilton Sundstrand Corp.*, 2012 WL 1966022, at *4 (N.D. Ill. May 31, 2012) (St. Eve, J.) (denying motion to dismiss for failure to plead adequately choice of law) (citing *Landmark Doc. Servs. LLC v. Omega Litig. Sols., LLC*, 2006 WL 2861098, at *1 (N.D. Ill. Sept. 29, 2006)). The external source of facts turns out to be Caterpillar's briefing. Caterpillar asserts key facts undergirding its choice of law analysis without any citation to the first amended complaint or evidentiary materials. For example, Caterpillar says that plaintiffs' products "were apparently bought, delivered, operated and repaired" in plaintiffs' home states. Mem. Supp. Mot. to Dismiss 13. The first amended complaint does not disclose where the machines were purchased, delivered, operated, or repaired, however. *See* Am. Compl. 2-8.

As discussed in Part III, the parties have not had an opportunity to develop the legal and factual record needed to resolve the important choice of law questions raised in this case. "[H]asty or imprudent use of [Rule 12(d)'s] summary procedure by the courts violates the policy in favor of ensuring to each litigant a full and fair hearing on the merits of his or her claim or defense." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) (quoting 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1368 (3d ed. 2002)). Accordingly, this court declines to convert defendant's Rule 12(b)(6) motion to a summary judgment motion.

Remaining then is the question of what to do given that the court cannot reach the contested choice of law issues. The answer requires a straightforward application of the well-settled rule that failure to develop a legal argument in an opening brief results in the argument's waiver. *See, e.g.*, *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 782 (7th Cir. 2013), *rev'd on other grounds,* 575 U.S. 665 (2015); *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) (holding that party waived argument by failing in both "opening and reply briefs to cite to any legal authority setting forth the appropriate legal standard for resolving his claim." (citations omitted)); *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) ("We have repeatedly made clear that perfunctory and undeveloped arguments that are unsupported by pertinent authority, are waived."). Because Caterpillar's choice of law allegations cannot be reached, the court assumes for purposes of the present motion that, as the first amended complaint alleges, Illinois law governs. Am. Compl. ¶ 53. Since Caterpillar does not cite or analyze Illinois law in support of its Rule 12(b)(6) motion, its arguments for dismissing the named plaintiffs' claims have been waived. *See* Mem. Supp. Mot. to Dismiss 22–25; Reply 11–14.

## V.  Conclusion

For the reasons stated, Caterpillar's motion to dismiss and to strike portions of plaintiffs' first amended complaint is denied.

Dated: March 1, 2021                             /s/
                                                                Joan B. Gottschall
                                                                United States District Judge